# AFFIDAVIT

I, Ryan T. Noonan, state:

## *INTRODUCTION AND AGENT BACKGROUND*

1. I have been a United States Postal Inspector with the United States Postal Inspection Service ("USPIS") since 2010. I am currently assigned to the USPIS Boston, Massachusetts Division Headquarters' Fraud Team, where I have experience investigating mail, wire, bank, and unemployment fraud, money laundering, structuring, and other financial crimes. I have received training in legal matters, including Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. Since the summer of 2025, I have been investigating the theft of checks out of the United States mail stream, including United States Treasury checks.

2. I submit this affidavit in support of an application for a criminal complaint charging VICTOR VASQUEZ ("VASQUEZ") with theft of government funds, in violation of 18 U.S.C. § 641, and for a warrant for VASQUEZ's arrest.

3. The facts in this affidavit come from my personal knowledge, information provided to me by other law enforcement agents, information I obtained through witness interviews, and my review of records described below. This affidavit is not intended to set forth all of the information that I have learned during this investigation and includes only the information necessary to establish probable cause for the requested complaint and arrest warrant.

## *PROBABLE CAUSE TO BELIEVE THAT A FEDERAL CRIME WAS COMMITTED*

4. As set forth below, there is probable cause to believe that in or about June 2024, VASQUEZ converted a stolen and altered United States Treasury check valued at approximately $1,000,000 to his use by depositing the check into a dormant business credit union account that he controlled. VASQUEZ claimed to the credit union that the check was a tax refund for his business,

but the investigation revealed that VASQUEZ had closed his business; the check had not issued to VASQUEZ's business; and VASQUEZ never filed any tax return that would generate an approximately $1,000,000 payment from the Treasury.

5. At all times relevant to this affidavit, Digital Federal Credit Union ("DCU") was a credit union headquartered in Massachusetts. Its deposits were insured by the National Credit Union Administration.

6. According to DCU and public records, VASQUEZ lived in Gardner, Massachusetts.

*2022 – VASQUEZ Establishes and Closes VICTOR NORTHEAST*

7. Records from the Secretary of the Commonwealth of Massachusetts show that VICTOR NORTHEAST CONSTRUCTION, LLC ("VICTOR NORTHEAST") was registered to do business in Massachusetts on or about November 9, 2022. Corporate registration records list VASQUEZ as the Manager and registered agent of VICTOR NORTHEAST.

8. Internal Revenue Service records indicate that in or about 2022, a Form SS-4, Application for Employer Identification Number ("EIN") was submitted on behalf of VICTOR NORTHEAST. The trade name listed on the Form SS-4 was "VICTOR VASQUEZ Sole Mbr."

9. According to DCU records, in or about November 2022, VASQUEZ opened a business checking account and a primary savings account in the name of VICTOR NORTHEAST. VASQUEZ, who was the only authorized signatory on the account, listed himself as the "Individual Beneficial Owner #1" and the "Controlling Person" on the account application.

10. On or about November 14, 2022, VASQUEZ signed and submitted a Certificate of Cancellation to the Corporations Division of the Massachusetts Secretary of the Commonwealth. The Certificate of Cancellation stated that VICTOR NORTHEAST was "[n]o longer conducting

business."

11. On or about February 10, 2023, VASQUEZ amended VICTOR NORTHEAST's name with the Secretary of the Commonwealth to Victory Northeast Construction, LLC.

*2024 – VASQUEZ Converts Government Funds to His Use*

12. On or about June 20, 2024, approximately 18 months after VASQUEZ submitted a Certificate of Cancellation for VICTOR NORTHEAST, a United States Treasury check numbered 4045-42602943, payable to Victor Northwest Construction LLC in the amount of $998,704.41, was deposited into the VICTOR NORTHEAST checking account at DCU. As shown below, the check was addressed to VASQUEZ at his Gardner, Massachusetts address.

13. At the time of the deposit of this check, the VICTOR NORTHEAST checking account had a balance of $4.67, which is consistent with a company that announced in November 2022 that it was no longer in business.

14. As shown below, the memo line on the check referenced "VICT OGDEN 12/2019 F-941 REF 01." Based on my training and experience investigating financial crimes and information obtained from the Internal Revenue Service, I know that memo lines like these typically refer to a Form 941 for business quarterly payroll tax returns filed for tax year 2019 and processed by the IRS at its service center in Ogden, Utah.


United States Treasury 15-51/000 B 493,774,488

Check No.

03 26 24 20092900 KANSAS CITY, MO 4045 42602943

000854413479 4045 42602943 I 20240712900000

Pay to the order of VICTOR NORTHWEST CONSTRUCTION LLC

VICTOR VASQUEZ

[redacted]

GARDNER MA 01440 2674

$**998704*41

VOID AFTER ONE YEAR

008

VICT OGDEN 12/2019 F-941 REF 01

57,734.34 INT 045 DAYS

[redacted]

15. IRS records indicate that VICTOR NORTHEAST has never filed any tax return that would generate a refund, let alone a refund of nearly $1,000,000. IRS records show no filings for the tax year 2019 for VICTOR NORTHEAST, which is consistent with the records showing that VICTOR NORTHEAST was not incorporated until 2022. VICTOR NORTHEAST has never filed a Form 941 as referenced in the memo of the United States Treasury check.

16. IRS records show that VASQUEZ filed a personal income tax return in 2022 that generated a refund of $33.

17. IRS records also show that United States Treasury check numbered 4045-42602943 was actually issued in the name of "Citibank NA As Common Paymaster," not in the name of Victor Northwest Construction, LLC, and not addressed to VASQUEZ. In fact, the Massachusetts Secretary of the Commonwealth has no record of any company named Victor Northwest Construction LLC. The check was, accordingly, altered to name Victor Northwest and to include VASQUEZ's name and address at some point after the IRS issued it and before it was deposited into the VICTOR NORTHEAST account at DCU.

18. When the Treasury check was deposited in the VICTOR NORTHEAST account, DCU placed a hold on a portion of the check on suspicion of fraud.

19. On or about July 5, 2024, approximately two weeks after the deposit of the Treasury check, DCU records show that $500 was transferred from the VICTOR NORTHEAST account to a Paypal account. Corresponding Paypal records for VASQUEZ show a deposit in the same amount, $500, the day before.

20. On or about July 5, 2024, $8,000—a portion of the proceeds of the Treasury check that DCU did not freeze—was also transferred from the VICTOR NORTHEAST account to a DCU account in VASQUEZ's name. Before receiving that $8,000 deposit, VASQUEZ's account had a balance of approximately $875. Because of the hold DCU placed on the check, the remaining Treasury check funds were not available to either VICTOR NORTHEAST or VASQUEZ.

21. AT&T records indicate that on or about July 5, 2024—the same day that $8,000 was transferred from the VICTOR NORTHEAST account to VASQUEZ's account—a telephone number subscribed to in VASQUEZ's name placed a call to and received a call from DCU.

22. The same day, DCU recorded a call with a person that stated his name was VICTOR VASQUEZ and represented himself to be the accountholder on the VICTOR NORTHEAST account. At the end of the call, VASQUEZ confirmed his phone number (ending in 1431) and an email address that contained his name, V.Vasquezjr932@[PROVIDER].com. Both the phone number and the email address appear on VICTOR NORTHEAST's DCU account application. Based on the fact that the caller identified himself as VASQUEZ, the call originated from VASQUEZ's phone, and VASQUEZ confirmed his phone number and email address to the DCU representative, there is probable cause to believe that the caller was VASQUEZ.

23. On the call, VASQUEZ asked, in substance, why the full value of the deposited Treasury check was not available. A DCU representative asked what the purpose for the check was, and VASQUEZ stated that the check was for his business. The DCU representative also

asked VASQUEZ what the maker of the check was paying him for, and VASQUEZ stated that it was a tax refund check for his business that he got in the mail and had deposited. There is probable cause to believe that VASQUEZ's answers to the DCU representative's questions were false because (a) VICTOR NORTHEAST was not registered as a business in 2019, the year for which the refund was generated; (b) VICTOR NORTHEAST was "no longer conducting business" as of 2024, when VASQUEZ sought the funds from the check for his business; (c) the Treasury check was altered to name a payee company, Victor Northwest, LLC, that was quite similar to VASQUEZ's actual but dormant company, VICTOR NORTHEAST; and (d) VICTOR NORTHEAST never filed any tax return that would generate a refund.

24. Between on or about July 5, 2024 and on or about July 16, 2024, VASQUEZ made approximately 18 withdrawals totaling $3,509.99 from the DCU account that received the $8,000 transfer, including:

a. $366.82 toward a DCU Quick Loan account in his name;

b. $200 toward a DCU Visa credit card account in his name;

c. $1,330.86 to Santander Chrysler, which, records indicate, lent VASQUEZ money toward the purchase of a 2021 RAM 1500; and

d. $408.10 toward a Capital One credit card account in his name.

25. For the reasons stated above, there is probable cause to believe that between on or about June 20, 2024 and on or about July 5, 2024, VASQUEZ embezzled, stole, purloined, and knowingly converted to his use and the use of another, and without authority, sold, conveyed and disposed of any record, voucher, money, and thing of value of the United States, to wit, the United States Treasury check numbered 4045-42602943 in the amount of $998,704.41, in violation of Title 18, United States Code, Section 641 and 2.

Sworn to under the pains and penalties of perjury,

Respectfully submitted,
/s/ Ryan T. Noonan

Ryan T. Noonan
United States Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me telephonically pursuant to Fed. R. Crim. P. 4.1(a) on
April __, 2026 April 6, 2026

Hon. M. Page Kelley
United States Magistrate Judge